## SILAS S. HART *v.* ELIJAH LINSDAY.

After a decree has been entered on a bill regularly taken as confessed, the question of opening it, to let in a defence on the merits, should be brought before the Court by petition, accompanied by the answer proposed to be put in.

A decree regularly entered will not be opened, except under special circumstances, and a stronger case must be made for this, than to vacate an order *pro confesso* before decree.

Where a party defendant has been guilty of gross negligence, a decree will not be opened, neither will a retaxation of costs be ordered, or sale be set aside.

Rule for computing costs and commissions on mortgage sales laid down.

MOTION to open a decree on bill taken as confessed, for a re-taxation of costs, and to set aside the Master's sale of mortgaged premises.

The bill was filed June 21st, 1839, and the subpoena personally served on the defendant, on the 27th day of the same month.

The defendant stated in his affidavit, on which this motion was founded, that, soon after the commencement of the suit, he went to the city of Detroit, and employed, as he supposed, Messrs. Witherell & Buel to attend to it for him, to whom he paid some money, and promised to send more; that he afterwards sent them more money, by a young man who, as he was informed, did not pay it to them; that he heard nothing further of the matter until August, 1841, when he learned the complainant had obtained a final decree in the cause; that he then called on the complainant, and agreed with him for a stay of all further proceedings for one year, on his paying him $30 for the extension, and all costs that had accrued, which he did. That the consideration of the mortgage was $200,

in what were commonly called Wildcat bank bills, mostly on the banks of Genesee and Lapeer; that he had but little acquaintance with, or knowledge of the value of bank bills of any kind, at the time, and received them solely on the representation of Truesdail, the mortgagee, who assured him they were current, and good money; that, on the next day, he was informed, by persons who were good judges of money, that the bills were worth little or nothing; and that he had not realized over $50 from them.

The complainant, in his affidavit, stated he was the *bona fide* holder of the mortgage; that he purchased it of Truesdail, and paid for it the full amount of the mortgage and interest; that, previous to his purchasing it, he told the defendant of his intention, when the defendant informed him it was a good, valid, and in all respects a fair mortgage, and would be paid by him; that, shortly after he commenced foreclosing it, defendant, for the first time, told him it was given for Wildcat money, which he had used, with the exception of forty or forty-five dollars; and he then proposed to pay $150, in a few days, if complainant would wait for the balance from six to nine months; that defendant afterwards had frequent interviews with complainant, and from time to time gave him assurances he would pay the money; that, July 7th, 1841, the defendant paid the Solicitor's and Register's fees, and, soon thereafter, again told complainant the money should be paid, and wished to know what kind of money complainant would take; that, about the last of August, or first of September following, he said he could not raise the money, and wished complainant to wait until the first of June, 1842; to which complainant stated he should have to go or send to Detroit, to consult counsel as to whether he could do so without prejudicing his rights, and if he could, and defendant would pay all the costs in the case, and

$30 for his trouble and expenses in going to Detroit to consult counsel, he would wait until that time. After counsel had been consulted, the agreement was concluded, and the $30 and Master's costs were paid, and the complainant was to be at liberty, if the mortgage debt was not paid, to advertise the premises before the first of June to be sold after that day. The premises were sold by the Master and bid in by the complainant on June 13th, 1842. The affidavit of True P. Tucker confirmed the statement of the complainant, as to the agreement to postpone the payment to the first of June, the payment of the $30, and the right to advertise the premises before the first of June, to be sold after that time.

*H. H. Emmons*, in support of the motion.

*H. T. Backus*, contra.

THE CHANCELLOR. After a decree has been entered on a bill regularly taken as confessed, the question of opening it, to let in a defence on the merits, should be brought before the Court by petition. In *Wooster* v. *Woodhull*, 1 *J. C. R.* 541; *Parker* v. *Grant, Id.* 630; *Lansing* v. *McPherson*, 3 *J. C. R.* 424, and *Russell* v. *Waite, ante* 31, the application was by petition. And the answer the defendant proposes to put in should accompany the petition, that the Court may see its materiality, and that it is a full and sufficient answer. A decree regularly entered will not be opened, unless under special circumstances. A stronger case must be made out than is ordinarily required to vacate an order for taking the bill as confessed, before a decree has been entered upon it. This may be done on motion or petition. But, to enable the Court to judge of the merits of the application, the defendant must set forth the nature of his defence, in the affidavit or petition,

or produce the sworn answer he proposes to file in the case. *Stockton* v. *Williams*, 1 *Har. Ch. R.* 241.

The defendant has not satisfactorily accounted for his delay in not making his application sooner. From his own statement he appears to have been guilty of gross negligence. The bill was filed June 21st, 1839, the subpœna served the same month, and the decree entered September 12th, 1840: Soon after the subpœna was served, he swears he employed, as he supposed, Messrs. Witherell & Buel to attend to the suit for him, and that he heard nothing more of it until August, 1841,—two years and more,—when he learned the complainant had obtained a decree against him. During this time he makes no inquiries of his Solicitors as to the progress of the suit, nor does he so much as call on them, or give himself any trouble whatever about it. When he is informed a decree has been taken against him by default, what does he do? He does not go to his Solicitors to learn the cause, but applies to complainant to give him until the following June to pay the money, and enters into an agreement for that purpose. He then waits until the time has expired, or is about to expire, before he makes his application to this Court. To open the decree under such circumstances, would be establishing a most dangerous precedent. The agreement for further time is, of itself, a sufficient reason why this part of the defendant's motion should be denied.

The costs were taxed September 14th, 1840. The reasons stated for refusing to open the decree apply to a retaxation of the costs. They are a part of the decree and were paid in part, under the agreement of the parties. In *Morris* v. *Morris*, 1 *J. C. R.* 44, the Court refused to order a retaxation of costs after two terms had intervened, on the ground the application came too late. In the present case, nearly two years have elapsed since the costs

Hart *v.* Linsday.

were taxed, and a year since they were paid by the defendant. In *Stockholm* v. *Robbins*, 24 *Wend. R.* 109, and the cases there cited, the question of costs was between attorney and client, and not between the parties to the suit. The Master should not have taxed the costs without the affidavit required by the ninety-third rule of the Court, but it is too late now to object to the irregularity.

The costs of selling the mortgaged premises were taxed by the Master at $42.34. Of this amount, $20 were for printing the notice of sale, and $22.34 Master's fees. The sale was adjourned five several times, at the request of complainant, and on account of the illness of the Master. The expense of adjournments should not be borne by the defendant, unless made at his request. The Master charges a commission of $10. I think this too high. Commissions on mortgage sales should be one per cent on the first $500, and one half of one per cent on the balance, the whole commissions in no case to exceed $10. Most of the other items were charged in the bill of costs taxed in September, 1840, and had been paid by the defendant, who should not have been charged with them a second time. The defendant may have an order for the retaxation of these costs, and, on ascertaining the amount overpaid, a further order requiring complainant to repay the same to defendant, with the $35 balance of the purchase money still in his hands, with interest on both sums from the day of sale, and, on the same being paid to the defendant, or to the Register of this Court for him, the Master's report of sale to stand confirmed.